# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

## NORTHERN DIVISION

|  |  |
|---|---|
| LISA ANDERSEN<br>205 West Edgevale Rd.<br>Brooklyn, MD 21225,<br><br>                    Plaintiff,<br>     v.<br><br>DITECH FINANCIAL LLC f/k/a<br>GREEN TREE SERVICING<br>1100 Virginia Drive, Suite 100A<br>Fort Washington, PA 19034,<br><br>                    Defendant. | Civil Action No.:  1:18-cv-1820<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.     Defendant Ditech Financial LLC (f/k/a Green Tree Servicing) ("Ditech" or "Defendant") has a long history of mortgage servicing and debt collection abuses.

2.     Though it ostensibly addressed its failures in a 2015 settlement with federal regulators, Plaintiff Lisa Andersen's ("Plaintiff") experience reveals that little has changed.

3.     Beginning with an attempt to secure a forbearance agreement, then to obtain a loan modification, Ditech's actions towards Plaintiff were marked with errors, failure to communicate, and aggressive and unfair debt collection efforts.

4.     Accordingly, Plaintiff brings this action based on Defendant's violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act (the "MCDCA"), and the Maryland

Consumer Protection Act ("MCPA").

### JURISDICTION

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 1331 and 1334.

6.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

### PARTIES

8.      Plaintiff Lisa Andersen is a natural person who resides in Brooklyn, Maryland.

9.      Defendant Ditech is a mortgage servicer that does business in Maryland and has its principal place of business in Fort Washington, Pennsylvania.

10.      Green Tree Servicing changed its name to Ditech in 2015.

11.      Ditech is responsible for receiving scheduled periodic payments Plaintiff's mortgage loan and making payments to HSBC on principal and interest and is therefore a "servicer" as that term is defined in 12 U.S.C. § 2605(i)(2)-(3).

### FACTS

### Background

12. On April 23, 2015, Ditech entered into a Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") with the Federal Trade Commission and the Consumer Financial Protection Bureau. *Fed. Trade Comm'n, et al. v. Green Tree Servicing LLC*, No. 15-cv-02064 SRN-JSM, Dkt. 5 (D. Minn.), attached hereto as Exh. A.

13. The Order settled a number of claims relating to Ditech's mortgage servicing business, including "conduct relating to …in-process loan modifications, including Defendant's alleged failure to timely respond to qualified written requests relating to in-process loan modifications."  Order, at 8.

14. Under the Order, Ditech agreed to cease debt collection attempts where it "knows or reasonably should know that the information for the account is facially unreliable, materially inaccurate, or missing material information" and/or where the consumer has disputed the debt  *Id.* at 14-15.

15. The Order set a 30-day deadline for investigation of consumer disputes.  *Id.* at 16.

16. Ditech also agreed under the Order to, within 60 days of the Order, solicit and fast-track review certain consumers, including Plaintiff, for loss mitigation options.  *Id.* at 35.

17. The Order further enjoined Ditech from making misrepresentations in the course of its collection efforts, including "[t]hat the consumers have to make payment on their loans before Defendant will consider them for loan modification" and any other behavior that amounted to a violation of the FDCPA.  *Id.* at 40, 45-47.

18. Finally, the Order barred Ditech from violating the FCRA and RESPA.  *Id.* at 47-50.

### Purchase of the Home

19. On or about April 29, 2004, Plaintiff obtained a mortgage from Centex Home Equity Company, LLC to purchase a home located at 205 West Edgevale Road, Brooklyn, Maryland (the "Home").

20. Plaintiff resides in the Home with her two teenage daughters, on of whom is disabled.

21. On or about April 12, 2007, Plaintiff refinanced the mortgage with Ohio Savings Bank. *See* Deed of Trust, attached hereto as Exh. B.

22. At the time she refinanced the mortgage, Everhome Mortgage ("Everhome") serviced her loan.

23. In or around August 2013, Plaintiff obtained a loan modification pursuant to the Home Affordable Modification Program, Tier 1.

24. Plaintiff made timely mortgage payments until January 2014, after losing her job in late 2013.

25. Ditech assumed servicing rights to Plaintiff's mortgage in or around early May 2014.

## Refusal of Payments and Unlawful Collection Efforts

26. Plaintiff obtained new employment in or around May 2014 and was prepared to resume payments in June 2014.

27. In or around May 2014, Plaintiff submitted a loss mitigation application to Ditech but received no written response.

28. In June 2014, Plaintiff attempted to resume mortgage payments, but Ditech refused to accept her payments.

29. Though Ditech had led Plaintiff to believe that a forbearance agreement was in place and confirmed as much through its own actions at the time, at the end of the forbearance period, it proceeded as if Plaintiff were simply delinquent on her payments.

30. For nearly two years, from June 2014 through March 2016, Ditech called Plaintiff on her cell phone demanding full payment of arrears accrued during the forbearance period.

31. During that period, Ditech called Plaintiff up to six times per day, often as early as 8 AM and as late as 10 PM.

32. Ditech also repeatedly called Plaintiff at her place of work despite Plaintiff's instructions that she could not receive such calls there, finally ceasing such harassment in late 2014.

33. The Ditech representatives repeatedly told Plaintiff that Ditech was going to take her house and that there was nothing she could do to prevent that from happening.

34. Ditech's representatives indicated to her that she could only avoid foreclosure by relinquishing her house through a deed in lieu of foreclosure or a short sale.

35. Ditech's representatives further indicated, without responding to Plaintiff's loss mitigation application, that she would not qualify for a loan modification.

36. Based on these representations, Plaintiff did not apply for and Ditech did not provide Plaintiff with any loan modification offers or trial period plans between May 2014 and April 2016.

37. During this time, Plaintiff made regular requests by phone that Ditech audit her account and provide her with documentation of the forbearance agreement.

## 2016 Loan Modification Application

38. In or around late 2015, Plaintiff secured new employment at a salary double that her of previous job.

39. In or around late April 2016, Plaintiff became aware of the possibility of a loan modification, notwithstanding Ditech's previous statements that the option did not apply to her, and submitted an application.

40. In or around June 2016, Ditech provisionally approved Plaintiff's loan modification pending completion of three streamline payments of $600.92.

41. Plaintiff timely completed each of the streamline payments but, as of September 2016, had not received her final modification documents.

42. That month, Plaintiff repeatedly contacted Ditech regarding final modification documents.

43. Ditech responded with unreturned calls and an attempt to pass responsibility to Fannie Mae for the delay.

44. Plaintiff contacted Fannie Mae directly on or about October 7, 2016, regarding her loan modification.

45. In October and November 2016, Plaintiff also continued to contact Ditech.

46. While waiting for her final modification paperwork, Plaintiff continued to make timely payments of $600.92 to Ditech, though Ditech failed to apply Plaintiff's payments.  *See* October and November 2016 Statements, attached hereto as Exh. C.

47. In or around mid-December 2016, Plaintiff received a Federal Express package containing final modification documents.

48. Though the documents were not sent until late November or early December 2016, the modification documents were dated October 21, 2016 and indicated that they must be returned by November 20, 2016—prior to the date they were mailed.  *See* Modification Offer, attached hereto as Exh. D.

49. The documents directed payment by December 1, 2016, prior to the date Plaintiff received them. *Id.*

50. Though Plaintiff's November 2016 statement indicated a principal balance of $91,997.64, the proposed modification stated that the new principal balance would be $113,247.20.

51. The proposed new principal balance represented an increase of $21,249.56, but the proposed modification accounted for an increase of only $10,965.30.

52. The proposed modification included legal fees, though Ditech had not initiated any foreclosure process nor served Plaintiff with any documents.  *Id.*

53. When Plaintiff inquired about the legal fees, Ditech informed her that they were included as a penalty rather than a charge for actual legal services, notwithstanding the fact that the proposed modification purported to waive late fees.

54. The modification paperwork did not reflect the payments Plaintiff made over the previous six months. *Id.*

55. Moreover, the escrow balance that comprised the bulk of the principal increase did not match the amounts listed on the escrow disclosure statements for the previous years. *See* 2014-2016 Escrow Statements, attached hereto as Exh. E.

56. Less than a year later, Ditech listed Plaintiff's escrow shortfall as less than half of the amount it attempted to roll into her principal balance. *See* 2017 Escrow Statement, attached hereto as Exh. F.

### First Qualified Written Request and Notice of Error

57. In late December 2016, Plaintiff contacted Ditech by phone and indicated her desire to send a "qualified written request" to Ditech regarding the loan modification.

58. Despite Plaintiff's specifically expressed intent to send a qualified written request, Ditech's representative directed Plaintiff to fax the letter to 480-383-0632 and to mail it to P.O. Box 6172, Rapid City, South Dakota 57709 in order to expedite the processing of that request.

59. Plaintiff relied on Ditech's representation that that address was correct for her qualified written request.

60.  In a qualified written request and notice of error dated December 30, 2016, Plaintiff contacted Ditech to notify them of the errors in the documents and to request an itemized

breakdown of the numbers in the modification. *See* December 30, 2016 Qualified
Written Request, attached hereto as Exh. G.

61. In January 2017, while attempting to resolve the discrepancies in the modification
documents and before receiving any response to her letter, Plaintiff attempted to make
another payment of $600.92.  Ditech rejected her payment.

62. Plaintiff contacted Ditech and was informed that the payment had been rejected because
she did not return the modification documents prior to their November 20, 2016
expiration, though the documents had not even been sent to her by that date.

63. Ditech informed Plaintiff that she should have signed the documents notwithstanding the
fact that they were expired before she received them and that they were incorrect.

64. Plaintiff followed up on her letter several times by phone, and never received a response
either by phone or in writing.

65. In a November 2017 letter in response to Plaintiff's CFPB complaint, Ditech admitted
that it did not timely respond to Plaintiff's qualified written request until September 18,
2017.

66. The September 18, 2017 letter, however, did not respond to Plaintiff's December 2016
qualified written request but to another, later request.

**Plaintiff's Bankruptcy**

67. On January 19, 2017, out of fear of imminent loss of her home due to Ditech's errors and
delays, Plaintiff filed for bankruptcy under Chapter 7 of the Bankruptcy Code in a case
captioned *In re Andersen*, No. 17-10602-RAG (Bankr. D. Md.).

68. During that time, Ditech did not send Plaintiff a revised modification.

69. Ditech did not appear at the February 13, 2017 meeting of creditors.

70. Plaintiff received a discharge on April 19, 2017, which included her mortgage and eliminated all of Plaintiff's outstanding debt obligations.

## Subsequent Loan Modification Applications

71. Plaintiff never received a revised modification agreement based on her original application.

72. On or about May 5, 2017, Plaintiff sent in another loan modification application.

73. On or about May 23, 2017, Ditech informed Plaintiff that the modification application was denied because she had not signed the previous untimely and inaccurate modification.

74. On or about July 1, Plaintiff submitted another loan modification application.  That application included a letter explaining why she had not signed the 2016 modification documents and notified Ditech that she had been the victim of identity theft, which temporarily affected the balance in her bank accounts but not her income and ability to pay her mortgage.

75. On or about July 20, 2017, Ditech confirmed to Plaintiff by phone that her application was complete and was being processed.

76. Just six days later, however, Ditech advised Plaintiff that her application was not, in fact, complete.  Ditech's representative indicated that Plaintiff was required to provide a divorce decree to prove her child support income.

77. Plaintiff advised Ditech that she was never married to her children's father but provided information for the Maryland Department of Human Resources matter that documented the child support obligations, the Maryland judiciary docket notation for the consent

order (No. Z02FM-16-001609) as well as statements for the bank account used exclusively for child support payments.

78. Fannie Mae's underwriting guidelines indicate that child support income may be supported by bank statements showing receipt of payments and documentation of a legal obligation for the child support.  *See* Fannie Mae, "Documentation Requirements for Current Receipt of Income," *at*

*https://www.fanniemae.com/content/guide/selling/b3/3.1/09.html#Alimony.20or.20Child.20Support* (last viewed June 11, 2018).

79. On or about August 8 and 10, 2017, Plaintiff called Ditech to check on the status of the modification and was advised both times that the child support could not be included without a divorce decree, notwithstanding the ample documentation of the support obligation and payments.

80. On or about August 15, 2017, Plaintiff received notice from Ditech that her modification packet was complete.

81. On or about August 16, 2017, Ditech denied the modification and subsequently denied Plaintiff's appeal.

82. The denial cited, as a reason, that the "hardship [was] not temporary or has not been resolved."

83. At the time of the denial, Plaintiff had maintained the employment for more than two years and had more than doubled the salary she had when the Ditech had initially approved a modification in 2016.

84. Upon information and belief, Ditech failed to include Plaintiff's documented child support payments in its assessment of her income and assessed her eligibility based on an incomplete application.

85. Plaintiff submitted additional loan modification applications, but the arrearage had increased so much, despite Plaintiff's attempts to make payments, that a loan modification was out of reach.

### Subsequent Qualified Written Request

86. On November 15, 2017, Plaintiff sent a qualified written request to the address designated by Ditech for that purpose.  Plaintiff requested her loan documents.  *See* November 15, 2017 Qualified Written Request, attached hereto as Exh. H.

87. Ditech responded on December 20, 2017, referencing previous correspondence and providing none of the documents Plaintiff requested and giving no reason for its failure to provide the documents.  *See* December 20, 2017 Letter from Ditech, attached hereto as Exh. I.

88. None of the previous correspondence from Ditech provided the information or documentation Plaintiff had requested.

### Contact While Represented by Counsel

89. In or around January 2018, Plaintiff notified Ditech in writing that she was represented by counsel.  Plaintiff provided her attorney's full contact information and requested that all further communications be directed to her attorney.

90. Notwithstanding Plaintiff's notice and Ditech's acknowledgement thereof, Ditech repeatedly contacted Plaintiff by phone and mail.

91. In one instance, in or around early June 2018, Ditech contacted Plaintiff by phone and attempted to pressure her into agreeing to a deed in lieu of foreclosure or short sale.

### Current Status

92. In or around May 2018, Ditech sent Plaintiff an initial Notice of Intent to Foreclose.

93. As of the filing of this Complaint, Ditech has not taken further steps to foreclose.

### Damages

94. As a result of Ditech's failure to respond to Plaintiff's December 2016 qualified written request and notice of error, Plaintiff was denied the opportunity to finalize the loan modification offer.

95. Also as a result of Ditech's failure to respond to Plaintiff's December 2016 qualified written request and notice of error, Ditech procured a significant default in Plaintiff's mortgage payments by failing to accept Plaintiff's payments and failing to consider her subsequent modification application.

96. Ditech's exacerbation of Plaintiff's default rendered any additional loan modification unworkable.

97.  As a direct result of Ditech's actions, Plaintiff suffered fear, anxiety, stress, frustration, and severe emotional distress, including panic attacks, depression, anxiety, weight loss, insomnia, contemplated suicide, and disruption in her ability to work.

98. In addition to Plaintiff's emotional distress, as a result of Ditech's actions, Plaintiff's two daughters, who live with her in the home, have also experienced severe emotional distress.

99. Plaintiff filed for bankruptcy as a direct result of Ditech's threats, breach of the forbearance agreement, and failure to properly process her loan modification, causing significant harm to her credit.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

### 12 U.S.C. § 2605(f)  and 12 C.F.R. § 1024.41(c)(1)

100.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

101.    Plaintiff submitted a complete loss mitigation packet in April 2016.

102.    Ditech failed to provide a substantive response within 30 days of receipt of the complete application, instead sending a letter *dated* within 30 days but sent more than a month after the date of the letter.

103.    Ditech's late response violates its obligations pursuant to 15 U.S.C. § 2605(f) and 12 C.F.R.  1024.41(c)(1).

104.    Ditech's actions are consistent with a pattern of behavior it was supposed to cease pursuant a 2015 consent order.

105.    As a result of Ditech's delayed response, she suffered actual damages, including, without limitation, fees, harm to her credit, diminished ability to secure a loan modification for which she had been approved, and emotional distress.

106.    Plaintiff is entitled to recover actual and/or statutory damages pursuant to 12 U.S.C. § 2605(f)(A) and (B), as well as costs and attorney's fees, pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT II

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

### 12 U.S.C. § 2605(f)  and 12 C.F.R. § 1024.41(c)(2)

107.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

108.    Plaintiff submitted a complete loss mitigation application in July 2017.

109.    Plaintiff's applications included multiple forms of proof of child support income, in compliance with the document guidelines set forth by Fannie Mae.

110.    Upon information and belief, Ditech failed to consider Plaintiff's child support income in assessing and subsequently rejecting Plaintiff's application based on insufficient income.

111.    Upon information and belief, Ditech considered an incomplete application, in violation of 15 U.S.C. § 2605(f) and 12 C.F.R.  1024.41(c)(2)(i).

112.    Ditech's actions are consistent with a pattern of behavior it was supposed to cease pursuant a 2015 consent order.

113.    As a result of Ditech's delayed response, she suffered actual damages, including, without limitation, fees, harm to her credit, diminished ability to secure a loan modification for which she had been approved, and emotional distress.

114.    Plaintiff is entitled to recover actual and/or statutory damages pursuant to 12 U.S.C. § 2605(f)(A) and (B), as well as costs and attorney's fees, pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT III

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

### 12 U.S.C. § 2605(f)  and 12 C.F.R. § 1024.41(g)

115.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

116.    Ditech sent Plaintiff a modification offer in December 2016 after the November 2016 deadline it provided to accept the offer.

117.    Plaintiff advised Ditech by phone and in writing of discrepancies in the December 2016 offer but received no response or corrected offer.

118.    Ditech rejected the first payment sent by Plaintiff after receipt of the December 2016 offer.

119.    Ditech rejected Plaintiff's subsequent modification applications in part because she had not timely signed the December 2016 offer and in part because of the accumulated arrears based on Ditech's rejection of Plaintiff's payments.

120.    Ditech did not give Plaintiff an opportunity to accept the modification for which she was eligible, in violation of 12 U.S.C. § 2605(f) and 12 C.F.R.  1024.41(g).

121.    Ditech's actions are consistent with a pattern of behavior it was supposed to cease pursuant a 2015 consent order.

122.    As a result of Ditech's delayed response, she suffered actual damages, including, without limitation, fees, harm to her credit, diminished ability to secure a loan modification for which she had been approved, and emotional distress.

123.    Plaintiff is entitled to recover actual and/or statutory damages pursuant to 12 U.S.C. § 2605(f)(A) and (B), as well as costs and attorney's fees, pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT IV

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
## 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35 and 1024.36

124.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

125.    Plaintiff sent a letter dated December 30, 2016 to Ditech at an address provided by Ditech's representative for receipt of qualified written requests.

126.    Plaintiff's letter contained her name, address, and loan number, along with specific requests for information and correction of errors.

127.    Plaintiff's letter was a notice of error and qualified written request.

128.    Ditech never responded to Plaintiff's qualified written request and notice of error.

129.    Plaintiff sent another qualified written request, dated November 15, 2017, to Ditech, at the address specified by Ditech for receipt of qualified written requests.

130.    Plaintiff's qualified written request contained her name, address, and loan number, along with specific requests for information.

131.    Ditech's December 20, 2017 response did not provide Plaintiff with the information requested, nor did it indicated that the information was not available to Ditech.

132.    Ditech failed to respond to either of Plaintiff's requests within 30 days receipt, in violation of 12 U.S.C. § 2605(e)(2)(C).

133.    Ditech's actions are consistent with a pattern of behavior it was supposed to cease pursuant a 2015 consent order.

134.    As a result of Ditech's violation, Plaintiff is entitled to recover actual and/or statutory damages pursuant to 12 U.S.C. § 2605(f)(A) and (B), as well as costs and attorney's fees, pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT V
## FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 *et seq.*

135.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully stated herein.

136.    Plaintiff is a natural person and consumer within the meaning of 15 U.S.C §. 1692a(3).

137.    Ditech acquired servicing rights to Plaintiff's mortgage loan after it was in default and regularly acquires servicing rights in defaulted loans, which it attempts to collect.

138.    Ditech is, accordingly, a debt collector as that term is defined in 15 U.S.C. § 1692a(6).

139.    Ditech violated 15 U.S.C. § 1692c(a)(2) by contacting Plaintiff repeatedly after it knew she was represented by an attorney.

140.    Plaintiff's counsel neither consented to contact with Plaintiff by Ditech nor failed to respond to Ditech within a reasonable time.

141.    Ditech further violated 15 U.S.C.  1692f by circumventing Plaintiff's attorney to pressure Plaintiff directly to accept purported loss mitigation options.

142.    Beginning in October 2015 and in violation of Md. Code Ann., Comm. Law § 14-202(8), Nationstar regularly listed Plaintiff's account as past due and demanded arrears and late fees.

143.    Ditech knew Plaintiff was represented by an attorney and nonetheless contacted her repeatedly.

144.    Ditech's actions are consistent with a pattern of behavior it was supposed to cease pursuant a 2015 consent order.

145.    Its actions were, accordingly, willful.

146.    Plaintiffs are entitled to an award of actual and statutory damages and attorney's fees pursuant to 11 U.S.C. § 1692k.

## COUNT VI

## MARYLAND CONSUMER DEBT COLLECTION ACT

## MD. CODE ANN., COMM. LAW §§ 14-201 - 14-204

147.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully stated herein.

148.    Plaintiff's mortgage loan is a transaction involving real property for personal, family, or household purposes and is, accordingly, a "consumer transaction" as that term is defined in Md.

Code Ann., Comm. Law § 14-201(c).

149.     Ditech collects or attempts to collect on Plaintiff's mortgage loan, a consumer transaction, and is accordingly a "collector" s that term is defined in Md. Code Ann., Comm. Law § 14-201(b).

150.     In the latter half of 2015 and early 2016, Ditech called Plaintiff with unreasonable frequency and at early morning and late night hours, in violation of Md. Comm. Law § 14-202(6).

151.     In violation of Md. Comm. Law § 14-202(8), Ditech, in its 2016 loan modification offer, also tried to collect a late penalty under the guise of legal fees, though it knew it had incurred no such fees and that the terms of the agreement itself waived late fees.

152.     Ditech's actions are consistent with a pattern of behavior it was supposed to cease pursuant a 2015 consent order.

153.     Its actions were, accordingly, willful.

154.     As a result of Nationstar's violations of the MCDCA, Plaintiff suffered damages including, but not limited to credit denials, damage to her credit rating, late fees, and emotional distress, and is entitled to actual damages and reasonable attorney's fees pursuant to § 14-204.

## COUNT VII
## MARYLAND CONSUMERP ROTECTION ACT
## MD. CODE ANN., COMM. LAW § 13-301

155.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully stated herein.

156.     Defendant violated the MCDCA, as set forth in Count VI.

157.     Pursuant to Md. Code Ann., Comm. Law § 13-301(14)(iii), Defendant's violations amount to a violation of the MCPA.

158.    Ditech also violated Md. Comm. Law  13-301(1) by providing Plaintiff with an incorrect address for her 2016 qualified written request and notice of error, on which Plaintiff relied.

159.    Plaintiff suffered damages, including, but not limited to, severe emotional distress.

160.    As a result of the Defendants' joint and several violation of the MCDCA, Plaintiffs are entitled to actual damages and reasonable attorney's fees pursuant to § 13-408 from the Defendants herein.

## PRAYER FOR RELIEF

WHEREFORE, to redress the injuries caused by Defendant's conduct as stated in the foregoing paragraphs, Plaintiff hereby requests the following relief:

- an award of actual damages pursuant to 12 U.S.C. § 2605(f)(A), 15 U.S.C. § 1692k, and Md. Comm. Law §§ 13-408 and 14-204;

- award of statutory damages pursuant to 15 U.S.C. 1692k, and 12 U.S.C. § 2605(f)(B);

- for an award of costs of litigation and reasonable attorney's fees pursuant to the 15 U.S.C. § 1692k, 12 U.S.C. § 2605(f)(3), and Md. Comm. Law § 13-408;

- an award of punitive damages;

- an award of pre-judgment and post-judgment interest; and

- for such other and further relief as may be just and proper.

19

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.


Dated:  Washington, D.C.                    Respectfully submitted on behalf of Plaintiff,

June 19, 2018


*/s/ Courtney L. Weiner*

Courtney L. Weiner (#19463)
Law Office of Courtney Weiner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
PH: 202-827-9980
cw@courtneyweinerlaw.com


*Attorney for Plaintiff*