**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| LISA ANDERSEN, | : | |
| | : | |
| | : | Civil Action No.: 1:18-cv-001820-RDB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DITECH FINANCIAL LLC f/k/a | : | |
| GREEN TREE SERVICING, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**<u>DEFENDANT DITECH FINANCIAL LLC f/k/a GREEN TREE SERVICING'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    FACTS AS ALLEGED IN THE COMPLAINT AND RELEVANT PROCEDURAL HISTORY ............................................................................................................. 2

III.   LEGAL STANDARDS ......................................................................................... 4

     A.    Motion to Dismiss for Lack of Standing ................................................. 4

     B.    Motion to Dismiss For Failure To State A Claim .................................... 5

     C.    Debtor's Duty of Full Disclosure ............................................................ 6

IV.   ARGUMENT ....................................................................................................... 9

     A.    Plaintiff Lacks Standing To Pursue These Claims, As They Remain Part Of The Bankruptcy Estate. ....................................................................... 9

     B.    This Court Further Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Because Only The Bankruptcy Trustee Has Standing To Pursue Claims That Belong To The Bankruptcy Estate. ................................... 12

     C.    Assuming Arguendo This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims Against Ditech, Plaintiff Is Judicially Estopped From Litigating Her Undisclosed Claims ....................................................... 13

          (i)    Plaintiff Took An Inconsistent Position In Her Bankruptcy Case, Which Provided Her With An Unfair Advantage .................................... 15

          (ii)   Plaintiff's Inconsistent Positions Were Assumed In Bad Faith And With The Intent To Mislead The Court For The Purpose Of Achieving Monetary Recovery. .................................................................. 16

          (iii)  Judicial estoppel is an appropriate remedy for Plaintiff's actions. ........... 17

V.    CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..............................................................................................6

*Atlantigas Corp. v. Columbia Gas Transmission Corp.*,
  210 F. App'x 244 (4th Cir. 2006) ............................................................................5

*Barger v. City of Cartersville*,
  348 F.3d 1289 (11th Cir. 2003) .............................................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................6

*Bland v. Doubletree Hotel Downtown*,
  No. 3:09CV272, 2010 WL 723805 (E.D.Va. March 2, 2010).................................16

*Brockington v. Jones*,
  No. 4:05-3267, 2007 WL 4812205 (D.S.C. Nov. 28, 2007)............................14, 17

*Browning Mfg. v. Mims (In re Coastal Plains)*,
  179 F.3d 197 (5th Cir. 1999) ...................................................................................7

*Cannon-Stokes v. Potter*,
  453 F.3d 446 (7th Cir. 2006) .................................................................................17

*Casto v. American Union Boiler Co. of West Virginia*,
  No. Civ. A 2:05-CV-00757, 2006 WL 660458 (S.D.W. Va. March 14, 2006)......................18

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
  538 F.3d 116 (2d Cir. 2008), cert. denied, 555 U.S. 1213 (2009) ..........................6, 10, 11, 18

*Dennis v. BankUnited (In re Dennis)*,
  No. 09-33957-WIL, 2010 Bankr. LEXIS 3506 (Bankr. D. Md. Sept. 30, 2010) ...................13

*Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*,
  166 F.3d 642 (4th Cir. 1999) ...................................................................................5

*First National Bank v. Lasater*,
  196 U.S. 115, 25 S.Ct. 206 (1905)........................................................................8, 9

*Folio v. City of Clarksburg*,
  134 F.3d 1211 (4th Cir. 1998) ...............................................................................14

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ...................................................................................18

*In re Andersen*,
   No. 17-10602-RAG (Bankr. D. Md.) ......................................................................1, 4

*In re Blair*,
   319 B.R. 420 (Bankr. D. Md. 2005) ........................................................................14

*In re Capozzi*,
   229 B.R. 250 (Bankr.S.D.Fla.1999) ........................................................................10

*In re: Superior Crewboats, Inc.*,
   374 F.3d 330 (5th Cir. 2004) ..................................................................................17

*In re USinternetworking, Inc.*,
   310 B.R. 274 (Bankr. D. Md 2004) ..............................................................15, 16, 18

*James v. Acre Mortg. & Fin., Inc.*,
   306 F. Supp. 3d 791 (D. Md. 2018) ..........................................................................1

*Khoury v. Meserve*,
   268 F. Supp. 2d 600 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) ...........5

*Lowery v. Stovall*,
   92 F.3d 219 (4th Cir. 1996) ....................................................................................14

*Miller v. Brown*,
   462 F.3d 312 (4th Cir. 2006) ....................................................................................4

*Miller v. Pacific Shore Funding*,
   287 B.R. 47 (D. Md. 2002), *aff'd*, 92 Fed. App'x 933 (4th Cir. Jan. 28, 2004) .................9, 11

*Moses v. Howard University Hospital*,
   606 F.3d 789 (D.D.C. 2010) ..........................................................................7, 9, 14

*National Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*,
   187 F.3d 439 (4th Cir. 1999) ..................................................................................12

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ................................................................................................14

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
   848 F.2d 414 (3rd Cir. 1988) ..................................................................................18

*Ortlieb v. Hudson Bank*,
   312 F. 705 (E.D. Pa. 2004) .......................................................................................7

*Payless Wholesale Distribs., Inc. v. Alberto Culver, P.R.J Inc.,*
   989 F.2d 570 (1st Cir. 1993) ..................................................................18

*Payne v. Wyeth Pharms. Inc.,*
   606 F. Supp. 2d 613 (E.D. Va. 2008) ...................................................17

*Robertson v. Flowers Baking Co. of Lynchburg, LLC,*
   No. 6:11 -cv-00013, 2012 WL 830097 (W.D.Va. March 6, 2012), *aff'd*, 474
   Fed. App'x 242 (4th Cir. 2012) ...............................................9, 12, 13

*Rosenshein v. Kleban,*
   918 F. Supp. 98 (S.D.N.Y. 1996) ..........................................................13

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co., et al.,*
   F.3d 355, 362 (3d Cir. 1996) ....................................................................7

*Solt v. Credit Prot. Ass'n, L.P. (In re Solt),*
   425 B.R. 263 (Bankr. W.D. Va. 2010) ..................................................12

*Stanley v. Sherwin-Williams Co.,*
   156 B.R. 25 (W.D. Va, 1993) .................................................................12

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) .....................................................................................5

*U.S. v. Whiting Pools, Inc.,*
   462 U.S. 198 (1983) ...................................................................................9

*United States ex rel. Gerbert v. Transport Administrative Servs.,*
   260 F.3d 909 (8th Cir. 2001) ..................................................................17

*Williams v. United States,*
   50 F.3d 299 (4th Cir. 1995) .......................................................................5

*Worth v. Seldin,*
   422 U.S. 490 (1975) .................................................................................13

*Young v. City of Mt. Rainier,*
   238 F.3d 567 (4th Cir. 2001) .....................................................................6

*Zinkand v. Brown,*
   478 F.3d 634 (4th Cir. 2007) ..................................................................14

**Statutes**

11 U.S.C. § 521(1) .......................................................................................7, 10

11 U.S.C. § 521(a)(1).........................................................................................10

11 U.S.C. §§ 521(a)(1)(B)(i), (iii)...................................................................................10

11 U.S.C. § 541(a)(1)............................................................................................9, 11

11 U.S.C. § 541(a)(7)....................................................................................................7

11 U.S.C. § 554(a)-(c)...........................................................................................10, 12

11 U.S.C. § 554(d).................................................................................................8, 10

**Rules**

Fed. R. Bankr. Proc. 1007(b)(1) ...................................................................................10

Fed. R. Bankr. Proc. 1007(b)(1) §521.06[3][a] ...........................................................10

Fed. R. Civ. P. 12(b)(6)..............................................................................................6, 19

**Other Authorities**

4-521 Collier on Bankruptcy, 15th Edition Rev. § 521.06(3)(b).....................................8

## I.    Introduction

This Honorable Court should dismiss Plaintiff's Complaint because Plaintiff lacks standing to pursue the claims she now seeks to bring.  Plaintiff s claims are premised upon the alleged conduct of Defendant Ditech Financial LLC f/k/a Green Tree Servicing ("Ditech" or "Defendant"), which pre-date a Chapter 7 bankruptcy petition Plaintiff filed in the United States Bankruptcy Court for the District of Maryland in a case captioned *In re Andersen*, No. 17-10602-RAG (Bankr. D. Md.).  Plaintiff alleges that she filed for bankruptcy as a result of Ditech's alleged actions on January 19, 2017.[1]  In her filing, Plaintiff neither identified her pre-petition claims as assets on her bankruptcy schedules, nor amended her schedules to include any claims against Ditech during the course of her bankruptcy proceedings.  As a consequence, the very claims Plaintiff now seeks to pursue against Ditech remain the property of the bankruptcy estate, and Plaintiff thus lacks standing to pursue them here.  This requires dismissal of Plaintiff's Complaint.

Plaintiff's claims further warrant dismissal because the doctrine of judicial estoppel bars Plaintiff from now profiting from the two irreconcilable positions she has taken in her bankruptcy proceedings and in this case.  At the time Plaintiff sought Chapter 7 bankruptcy protection, she identified no causes of action against Ditech as assets or potential assets, even though her claim existed prior to her bankruptcy filing, and even though she alleges she filed bankruptcy as a direct result of Ditech's alleged conduct.  Now, after having received the benefit of discharge, Plaintiff seeks to recover personally for the alleged pre-petition actions of Ditech— in other words, she seeks to benefit financially for pre-petition activity she failed to disclose in

---

[1] Notably, Plaintiff alleges she filed Chapter 7 bankruptcy on January 19, 2017, but the docket (of which this Court can take judicial notice) indicates the filing was January 17, 2017. *See James v. Acre Mortg. & Fin., Inc.*, 306 F. Supp. 3d 791, 799 (D. Md. 2018) (noting that courts "may take judicial notice of 'docket entries, pleadings and papers in other cases.'" (quoting *Brown v. Ocwen Loan Servicing, LLC*, No. PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015)), *appeal docketed*, No. 18-1229 (4th Cir. Mar. 2, 2018).

her bankruptcy filings.   Plaintiff should be judicially estopped from so profiting, and her Complaint should be dismissed with prejudice as to any claims arising prior to her Chapter 7 bankruptcy filing and discharge.

## II.    Facts As Alleged In The Complaint and Relevant Procedural History

Plaintiff Lisa Andersen resides in Brooklyn, Maryland at the address 205 West Edgevale Road (the "Property").   *See* Complaint ("Compl.") ¶¶ 8, 19.   As alleged, on or about April 29, 2004, Plaintiff obtained a mortgage from Centex Home Equity Company, LLC to purchase the Property and, thereafter, refinanced her mortgage with Ohio Savings Bank on April 12, 2007.   *Id.* at ¶¶ 19, 21.   A few years later in 2013, Plaintiff claims she obtained a loan modification pursuant to the Home Affordable Modification Program ("HAMP").   *Id.* at ¶ 23.

Plaintiff claims that after losing her job in late 2013, she secured a forbearance agreement through her servicer Everhome Mortgage.   *Id.* at ¶ 1, 24.   Beginning in early May 2014, Ditech assumed servicing rights to Plaintiff's mortgage.   *Id.* at ¶ 25.   Plaintiff obtained new employment in or around May 2014 and was prepared to resume payments in June 2014.   *Id.* at ¶ 27. Thereafter, in June 2014, Plaintiff claims she submitted a loss mitigation application and attempted to resume her mortgage payments to Ditech, but her payments were refused.   *Id. at* ¶¶ 26–28.   Plaintiff claims that rather than allow her to resume payments, Ditech allegedly proceeded as if Plaintiff were delinquent and "demand[ed]" payment until March 2016.   *Id.* at ¶¶ 29–35.

Plaintiff alleges that she continually requested an "audit [of] her account" to confirm the forbearance agreement, but as a result of Ditech's alleged calls, she did not apply for and was not provided a loan modification.   *Id.* at ¶¶ 36–37.   However, in 2015, Plaintiff obtained new employment with a substantially higher salary and applied for a loan modification in or around

April or June 2016. *Id.* at ¶¶ 38–40. Plaintiff alleges she was provisionally approved for the modification in June 2016 and began making payments of $600.92. *Id.* at ¶ 40. Despite completing her trial payments in September 2016, Plaintiff claims she was not provided her permanent loan modification approval until mid-December 2016. *Id.* at ¶¶ 41–47. During this time, Plaintiff alleges she called Ditech and Fannie Mae to inquiry about the loan modification and continued to pay the trial payments in the amount of $600.92. *Id.*

Plaintiff claims that, although she did not receive the permanent loan modification documents until December 2017, the paperwork required her to sign and return the documents by November 20, 2016. *Id.* at ¶ 48. Plaintiff also alleges the permanent loan modification documents she received in December 2016 contained inconsistent and incorrect financial and payment information. *Id.* at ¶¶ 50–56. For instance, Plaintiff alleges the permanent loan modification indicated the new principal balance for her loan would be $113,247.20, but her November bank statement indicated a principal balance of $91,997.64. *Id.* at ¶ 50. The permanent loan modification also allegedly did not reflect the previous six months' payments. *Id.* at ¶ 54. Plaintiff also alleges she inquired about the legal fees included in the permanent loan modification documentation and was informed "that they were included as a penalty." *Id.* at ¶¶ 52–53.

As a result of these alleged inaccuracies, Plaintiff claims she called Ditech and requested information to file a "qualified written request" ("QWR"). *Id.* at ¶¶ 56–59. Thereafter, on December 30, 2016, Plaintiff allegedly sent Ditech a QWR "to notify them of the errors in the documents and to request an itemized breakdown of the numbers in the modification." *Id.* at ¶ 60. Plaintiff claims she did not receive a response to this QWR. *Id.* at ¶ 64, 66. Plaintiff also

alleges that on January 1, 2017, Ditech rejected Plaintiff's payment in the amount of $600.92 because "she did not return the modification documents." *Id.* at ¶ 61–63.

Then, on January 19, 2017, "out of fear of imminent loss of her home due to Ditech's errors and delays, Plaintiff filed for bankruptcy under Chapter 7 of the Bankruptcy Code in a case captioned *In re Andersen*, No. 17-10602-RAG (Bankr. D. Md.)." *Id.* at ¶ 67; *see also id.* at ¶ 99 ("Plaintiff filed for bankruptcy as a direct result of Ditech's threats, breach of the forbearance agreement, and failure to properly process her loan modification, causing significant harm to her credit."). Plaintiff alleges she received a discharge on April 19, 2017. *Id.* at ¶ 70. Thereafter, Plaintiff claims she submitted an application for a loan modification, which was denied on or about August 16, 2017. *Id.* at ¶¶ 71–85. Plaintiff also alleges she submitted an additional QWR in November 2017, to which Ditech insufficiently responded. *Id.* at ¶¶ 86–87. Plaintiff also claims that, while she allegedly notified Ditech that she was represented by counsel in January 2018, Ditech impermissibly continued to contact her. *Id.* at ¶¶ 89–91.

The Complaint alleges that around May 2018, Ditech sent Plaintiff a notice of intent to foreclose. *Id.* at ¶ 92. The following month, on June 20, 2018, Plaintiff filed this action against Ditech for violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act (the "MCDCA"), and the Maryland Consumer Protection Act ("MCPA").

## III.    Legal Standards

### A.    Motion to Dismiss for Lack of Standing

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). A federal court's jurisdiction depends upon a plaintiff's standing. "A court does not have

subject matter jurisdiction over an individual who does not have standing." *Atlantigas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006).

When a defendant moves to dismiss for lack of standing pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765. 768 (4th Cir, 1991). *cert, denied*, 503 U.S. 984 (1992)).   The requirement for a plaintiff to establish subject matter jurisdiction "as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co*., 523 U.S. at 94-95 (quoting *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

When a defendant challenges subject matter jurisdiction, "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co*., 945 F.2d at 768); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (In considering exhibits outside the pleadings, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").   That is, "'the court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).   The court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F, Supp, 2d at 799.

### B.      Motion to Dismiss For Failure To State A Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), all of the well-pleaded factual allegations in a plaintiff's complaint must be accepted as true and construed in the light most favorable to  plaintiff; however, unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.  *See Young v. City of Mt. Rainier*, 238 F.3d 567, 577 (4th Cir. 2001).  Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotations omitted).  More specifically, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (citations omitted). To survive a Rule 12(b)(6) motion, a plaintiff's factual allegations, when assumed to be true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### C.       Debtor's Duty of Full Disclosure

The integrity of the bankruptcy system depends on full and honest disclosure by debtors of all their assets.  Complete disclosure is "essential to the proper functioning of the bankruptcy system," and "the Bankruptcy Code severely penalizes debtors who fail to disclose assets." *Chartschlaa*, 538 F.3d at 122.  "This means that a debtor is under a duty both to disclose the

existence of pending lawsuits when he files a petition in bankruptcy and to amend his petition if circumstances change during the course of the bankruptcy." *See Moses v. Howard University Hospital*, 606 F.3d 789, 793 (D.D.C. 2010) (citations omitted). "Creditors rely on a debtor's disclosure statements in determining whether to contest or consent [to a discharge]. Bankruptcy courts rely on the accuracy of the disclosure statements when considering whether to approve [discharge] [t]he importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co., et al.*, .F.3d 355, 362 (3d Cir. 1996). A debtor seeking shelter under the bankruptcy laws must disclose all assets, including pre-petition litigation, to the bankruptcy court. Indeed, the duty of full and honest disclosure has been characterized not only as a crucial linchpin of the effective functioning of the federal bankruptcy system, but as "the pivotal concept in reorganization procedure under the Code." 5 Collier on Bankruptcy, Paragraph 1125.03 (15th Ed. 1998); *see also* 11 U.S.C, §§ 521(1), 541(a)(7).

The duty to disclose is a continuing one, and this obligation does not end once the preliminary forms and schedules are submitted to the bankruptcy court; rather, a debtor must amend his or her financial statements if circumstances change. *Browning Mfg. v. Mims (In re Coastal Plains)*, 179 F.3d 197, 208 (5th Cir. 1999). This obligation of full disclosure continues throughout the pendency of the bankruptcy proceeding, and requires the debtor to amend the schedules as necessary to ensure the accuracy and reliability of the disclosed information. Indeed, in *Ortlieb v. Hudson Bank*, 312 F. 705, 714 (E.D. Pa. 2004), the Court noted that "[b]ecause both creditors and the Court must rely heavily on these disclosure statements, a 'Court cannot overemphasize the importance of the debtor's obligation to accurately represent its financial position."' (internal citations omitted).

A debtor is required to list all assets and liabilities in order to provide the Bankruptcy Court, the Trustee, and the creditors of the Estate with all available information regarding the debtor's financial condition. Such disclosure is imperative to the adjudication, administration and distribution of the debtor's claims and liabilities in accordance with the Code. When a debtor fails to list assets, the bankruptcy process is stymied, because neither the Trustee nor the Bankruptcy Court can administer such hidden property, determine whether it has value, or determine whether such property should be distributed for the benefit of the estate's creditors or abandoned back to the debtor.

Given the importance of full disclosure in bankruptcy, the Code actually forbids debtors from obtaining title to, or seeking to recover, undisclosed assets which were never abandoned in the bankruptcy case. The Code provides that "[u]nless the court orders otherwise, property of the estate that is not abandoned and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). As one well-recognized bankruptcy scholar aptly stated:

> [P]roperty to which [a] debtor holds title becomes property of the estate as of the filing of the petition and a failure to schedule it does not affect the custody of the court. Upon closing of the case, only scheduled property that has not been administered is abandoned under Section 554(c)

4-521 Collier on Bankruptcy, 15th Edition Rev. § 521.06(3)(b).

Courts have regularly enforced this prohibition and barred debtors from asserting claims that are not disclosed in their bankruptcy cases. The United States Supreme Court first articulated this principle more than 100 years ago in *First National Bank v. Lasater*, 196 U.S. 115, 25 S.Ct. 206 (1905). In that seminal case, the Supreme Court addressed the issue of whether an unlisted right of action – a claim for usurious interest which passed to the trustee in bankruptcy when the debtor filed a Chapter VII bankruptcy petition – was transferred to the debtor when the bankruptcy proceedings were

terminated.   The Supreme Court held that a bankrupt party cannot fail to schedule or disclose property, and then, after the bankruptcy has been closed, assert title to the property. *Lasater*, 196 U.S. at 119, 25 S. Ct. at 208.

Since the Supreme Court's decision in *Lasater*, courts across the country have followed *Lasater's* guidance. *See, e.g., Robertson v. Flowers Baking Co. of Lynchburg, LLC*, No. 6:11 -cv-00013, 2012 WL 830097, at *4 (W.D.Va. March 6, 2012) (holding that even if the debtor fails to disclose any causes of action, they nevertheless become the "exclusive property of the bankruptcy estate" upon the filing of a petition for bankruptcy), *aff'd*, 474 Fed. App'x 242 (4th Cir. 2012) (per curiam); *see also Miller*, 287 B.R. at 50 (holding that property of the debtor does not escape the bankruptcy estate even if the debtor is unaware of its existence); *Moses v. Howard Univ. Hosp.*, 606 F.3d 789 (D.C. App. 2010) (holding that a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the sole party with standing to prosecute claims belonging to the bankruptcy estate).

## IV.   Argument

### A.   Plaintiff Lacks Standing To Pursue These Claims, As They Remain Part Of The Bankruptcy Estate.

Immediately upon the filing of a Chapter 7 bankruptcy petition, a bankruptcy estate is created and "all legal or equitable interests of the debtor in property as of the filing date are included in the estate. 11 U.S.C. § 541(a)(1); *see U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 and nn.8-9 (1983) (Section 541 defines "property of the estate" broadly to include all of the debtor's interests, both legal and equitable).   Any cause of action belonging to the debtor at the time of commencement of the bankruptcy case constitutes an asset to be transferred to the trustee. *Miller v. Pacific Shore Funding*, 287 B.R. 47, 49-50 (D. Md. 2002) (emphasis added),

*aff'd*, 92 Fed. App'x 933 (4th Cir. Jan. 28, 2004) (citations omitted); *see also Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008), cert. denied, 555 U.S. 1213 (2009) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541," including "causes of action owned by the debtor....").

As indicated above, under the Bankruptcy Code. 11 U.S.C. § 521(a)(1), a debtor is required "to disclose all his interests at the commencement of a case," including, *inter alia*, the filing of a "schedule of assets and liabilities" and a "statement of the debtor's financial affairs" with the bankruptcy court. 11 U.S.C. §§ 521(a)(1)(B)(i), (iii).  This duty to disclose applies to pre-petition claims, *i.e.,* claims that arose under state law prior to the date of the bankruptcy filing.  *See* 11 U.S.C. § 521(1) ("the debtor shall file... a schedule of assets and liabilities... and a statement of the debtor's financial affairs..."); Fed R. Bankr. Proc. 1007(b)(1); 4-521, Fed. R. Bankr. Proc. 1007(b)(1) §521.06[3][a] ("Possible causes of action belonging to the debtor should be listed, even if the likelihood of success is unknown").  Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is expressly and unequivocally abandoned back to the debtor.  11 U.S.C. § 554(a)-(c).  At the close of the bankruptcy case, any estate property not abandoned or administered in the bankruptcy proceedings remains the property of the bankruptcy estate.  11 U.S.C. § 554(d).[2]  Significantly, failure to list an asset as property of the bankruptcy estate does not prevent it from becoming property of the estate.  11 U.S.C. § 554(d).

Here, Plaintiff affirmatively alleges that as a result of Ditech's purported conduct, she had no choice but to file bankruptcy to stop the foreclosure sale of her home.  Compl., ¶¶ 67, 99.

---

[2] Notably, property cannot be abandoned under the Bankruptcy Code unless the debtor formally lists the property in her schedules and financial statements. *In re Capozzi*, 229 B.R. 250, 251 (citing *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir. 1995); *Vreugdenhill v. Navistar Intl Transp. Corp.*, 950 F.2d 524 (8th Cir. 1991); *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25 (W.D. Va, 1993)).  There is no "informal abandonment"; rather, the debtor must formally list her assets and the Trustee must formally abandon them. *Id.*

It therefore necessarily follows that the majority of Plaintiff's claims against Ditech accrued prior to the filing of the Voluntary Petition in January 2017 (and through Plaintiff's discharge in April 2017).   The allegations in the complaint confirm this.   According to Plaintiff, Ditech improperly failed to account for her forbearance agreement in *2014*.  Compl., ¶¶ 25–28.  Plaintiff alleges that as a result, Ditech "proceeded as if Plaintiff were simply delinquent on her payments" and allegedly continued to call Plaintiff "demanding" payment until March *2016*.  *Id.* at ¶¶ 29–35.

Plaintiff's other claims are based on a *2016* loan modification, which also took place prior to the Chapter 7 bankruptcy in 2017.  Specifically, Plaintiff alleges she was approved for a "provisional" loan modification, but her permanent loan modification documents were delayed by Ditech.   Compl., ¶¶ 38–47.   Plaintiff alleges multiple errors in the permanent loan modification documents she received, and claims that as a result of the delay in her receipt, Plaintiff was unable to timely accept the permanent modification.  *Id.* at ¶¶ 48–63.  Plaintiff also sent an alleged QWR prior to filing bankruptcy requesting information concerning the alleged loan modification errors.  *Id.* at ¶¶ 56–59.

Inasmuch as all of these claims accrued in 2017 or earlier, they became the exclusive property of the bankruptcy estate when Plaintiff filed her Voluntary Petition on January 17, 2017.  Even though these pre-petition claims were not specifically set forth in the bankruptcy petition, or Plaintiff's bankruptcy schedules, the claims still became part of her bankruptcy estate on the date she sought Chapter 7 bankruptcy protection.  11 U.S.C. § 541(a)(1); *Miller*, 287 B.R. at 49-50; *Chartschlaa*, 538 F.3d at 122 ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541," including "causes of action owned by the debtor....").  The causes of action asserted in this case were never

abandoned back to Plaintiff by the Trustee; rather, they remained part of the bankruptcy estate, and all rights formerly held by Plaintiff were extinguished.  11 U.S.C. § 554(a)-(c).  Thus, having been divested of any interest she had in this litigation, Plaintiff lacks standing to prosecute her claims against Ditech relating to events occurring prior to January 17, 2017.  This in and of itself is a sufficient basis for this Court to dismiss claims against Ditech with prejudice for lack of standing.

> **B.      This Court Further Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Because Only The Bankruptcy Trustee Has Standing To Pursue Claims That Belong To The Bankruptcy Estate.**

Upon the filing of her Voluntary Petition, Plaintiff surrendered to the bankruptcy trustee the right to control the estate, including existing or potential legal claims.  *National Am. Ins. Co. v. Ruppert Landscaping Co., Inc*., 187 F.3d 439, 441 (4th Cir. 1999) ("If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim.");  *accord Solt v. Credit Prot. Ass'n, L.P. (In re Solt),* 425 B.R. 263, 266 (Bankr. W.D. Va. 2010) ("Since the Court has found that the FDCPA Claim is property of the estate, the Trustee is the only party with the authority to prosecute the claim.  Therefore, the Plaintiff lacks standing to bring this action and there is no subject matter jurisdiction.");  *Stanley v. Sherwin-Williams Co*., 156 B.R. 25, 26 (W.D. Va. 1993) (preventing Chapter 7 debtor from litigating a cause of action which belonged to the estate on the grounds that the debtor "lacks standing because the cause of action is [no longer] his to assert").  Moreover, "the bankruptcy trustee's authority also extends over causes of action . . . that were never disclosed to the bankruptcy court in the debtor-plaintiff's bankruptcy filing," *Robertson*, 2012 WL 830097, at *4.

In this case, Plaintiff claims that Ditech's alleged wrongful conduct forced her to file bankruptcy (Compl. ¶¶ 67, 99), yet she failed to disclose any of the claims she is attempting to

assert here against Ditech to the Bankruptcy Court.   As a result, whatever claims Plaintiff believes she has against Ditech remain the sole property of the bankruptcy estate and only the bankruptcy trustee has standing to pursue them.   Plaintiff therefore is not "entitled to have the court decide the merits of the dispute."  *Worth v. Seldin*, 422 U.S. 490, 498 (1975).

Accordingly, this Court lacks subject matter jurisdiction over Plaintiff, and the claims pre-dating the bankruptcy petition should be dismissed pursuant to Rule 12(b)(1).   *See Robertson*, 2012 WL 830097, at *4 (holding that dismissal is proper for lack of subject matter jurisdiction when "plaintiff's claims against [d]efendant in this action, even though undisclosed to the bankruptcy court, became exclusive property of the bankruptcy estate, and therefore only the bankruptcy trustee – not Plaintiff – has the sole authority over such claims"); *accord Dennis v. BankUnited (In re Dennis)*, No. 09-33957-WIL, 2010 Bankr. LEXIS 3506, at *7 (Bankr. D. Md. Sept. 30, 2010) ("As the Debtor's claims accrued prepetition, they were a part of her bankruptcy estate and standing to pursue any such claims vested with the Chapter 7 Trustee .... Absent abandonment or participation by the Chapter 7 Trustee ... the Debtor lacks standing to pursue this adversary proceeding."); *Rosenshein v. Kleban*, 918 F. Supp. 98. 103 (S.D.N.Y. 1996) ("Courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed.").

C.   **Assuming *Arguendo* This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims Against Ditech, Plaintiff Is Judicially Estopped From Litigating Her Undisclosed Claims.**

Even assuming this Court has subject matter jurisdiction over Plaintiff's claims, which it does not, Plaintiff is judicially estopped from bringing this litigation.   "Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is

inconsistent with a stance previously taken in court." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (citing *John S. Clark Co. v. Faggert & Frieden. P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)). The rationale is that a party should not be allowed to benefit herself "by maintaining inconsistent positions regarding a particular situation." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). To establish a basis for judicial estoppel, the defendant must show that: 1) the plaintiff has advanced an assertion that is inconsistent with a position taken during previous litigation; 2) the position is one of fact instead of law or legal theory; 3) the court in the first proceeding accepted the prior position; and 4) the plaintiff acted intentionally and not inadvertently. *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998); *In re Blair*, 319 B.R. 420, 439 (Bankr. D. Md. 2005) (barring malpractice action on the basis of judicial estoppel for failure to disclose the same in bankruptcy schedules).

The disclosure obligation is one taken seriously by all courts, and for good reason: were such rigorous standards not enforced, debtors would otherwise be tempted to make a less than full disclosure to the Bankruptcy Court in an effort to secret certain assets and reap their benefit at a later date. In an effort to dissuade such nefarious actions, courts have routinely applied the doctrine of judicial estoppel as a means of maintaining the integrity of the judicial process and reinforcing the notion that debtors seeking the protection of the Bankruptcy Code are required to comply with the Code's requirements. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."); *see also In re Blair*, 319 B.R. at 439; *Brockington v. Jones*, No. 4:05-3267, 2007 WL 4812205, at *4 (D.S.C. Nov. 28, 2007) (recognizing that the failure to disclose a claim in bankruptcy court is treated as a representation that no such claim exists); *Moses*, 606 F.3d at 793  (holding that

Plaintiff was judicially estopped from pursuing race discrimination claim against his former employer due to Plaintiff's failure to disclose the suit in prior bankruptcy proceedings).

> **(i)**      **Plaintiff Took An Inconsistent Position In Her Bankruptcy Case, Which Provided Her With An Unfair Advantage**

An examination of the record readily demonstrates that Plaintiff took "irreconcilably inconsistent" positions in her bankruptcy proceedings and in this case and her representations were accepted by the Bankruptcy Court.[3]

First, as to her bankruptcy proceedings, the record contains no indication whatsoever of Plaintiff's disclosure of the existence of this lawsuit to the Bankruptcy Court, the Trustee, and her creditors.  In her bankruptcy schedules, Plaintiff identifies no pending litigation or potential claims for relief as existing or potential assets.  *See* a true and correct copy of Plaintiff's Voluntary Petition for Bankruptcy, Case No. 17-10602 (Bankr. D. Md. Filed Jan. 17, 2017), Bankr. ECF No. 1, attached hereto as **Exhibit A**, at p. 14.  The bankruptcy docket, of which this Court can take judicial notice, demonstrates that Plaintiff never amended her bankruptcy schedules or otherwise updated her filings to include these claims; similarly, the docket bears no Notice of Abandonment or any other analogous filing by the Trustee indicating that the Trustee was formally abandoning this litigation back to Plaintiff's possession.  Under oath and penalty of perjury, Plaintiff verified the accuracy and truthfulness of her disclosures, even though the actions giving rise to this litigation – indeed, the actions purportedly giving rise to the bankruptcy itself – predated her bankruptcy proceedings, and yet were not included on her disclosures.

---

[3] Notably, Plaintiff's position as to her claims in this lawsuit and her omission of such claims in her bankruptcy proceeding is one of fact rather than law or legal theory.  *In re USinternetworking, Inc.*, 310 B.R. 274, 284 (Bankr. D. Md. 2004) (holding that omission of a claim during a bankruptcy proceeding is a matter of fact rather than a matter of law).

Second, Plaintiff's representation as to her claims, or lack thereof, against Ditech was accepted by the Bankruptcy Court.   Indeed, the Bankruptcy Court accepted all of the representations in Plaintiff's Chapter 7 filings when the court granted Plaintiff her discharge on April 19, 2018 and closed her bankruptcy case, which occurred after the majority of Plaintiff's claims accrued.   *See, e.g.*, Compl. ¶¶ 25–63.   Courts have held that where a debtor fails to list a potential claim on her bankruptcy petition, or fails to amend the petition when the claim becomes known, three of the four criteria for judicial estoppel are generally met.   *See Bland v. Doubletree Hotel Downtown*, No. 3:09CV272, 2010 WL 723805, at * 3 (E.D.Va. March 2, 2010); *see also In re USinternetworking, Inc*., 310 B.R. at 281-285.

In this matter, it is clear that Plaintiff knew of her claims against Ditech pre-petition, but failed to identify and list the claims as required.   Plaintiff maintained her inconsistent positions throughout the duration of her bankruptcy, in spite of her duty to disclose this litigation on her petition and put the Trustee and her creditors on notice of its existence.   The Bankruptcy Court, Trustee and creditors had no knowledge of this claim because Plaintiff never told them of its existence.   Such actions violate her duty of full disclosure required under the Bankruptcy Code, and satisfy the first two elements of judicial estoppel.

### (ii)     Plaintiff's Inconsistent Positions Were Assumed In Bad Faith And With The Intent To Mislead The Court For The Purpose Of Achieving Monetary Recovery.

Plaintiff not only knowingly failed to disclose the existence of this lawsuit when disclosure was mandated, but she had an obvious compelling motivation to do so: by hiding this lawsuit, Plaintiff gave the Bankruptcy Court, the Trustee, and her creditors the impression that she had only $127,850 in assets while burdened with over $135,474.20 in liabilities.   *See* Ex. A, at 8.   With so few assets and so many debts, Plaintiff's creditors compromised their own recoveries.   There is no question that the balance of assets and liabilities before the court and

creditors during the pendency of Plaintiff's bankruptcy would have been affected had she listed these claims as an asset. *Payne v. Wyeth Pharms. Inc.*, 606 F. Supp. 2d 613, 616 (E.D. Va. 2008) ("[W]hether the litigant intentionally misled the court to gain unfair advantage is the determinative factor in the application of judicial estoppel to a particular case.").

As her Schedules reflect, she essentially informed her creditors and the Court that she had very few assets on which recovery could be sought. At the same time Plaintiff's concealment of this litigation worked to her advantage in the bankruptcy proceeding, it also served to posture Plaintiff for future monetary gain. Plaintiff believes this claim to have merit and therefore value; indeed, in her Complaint she seeks recovery that includes actual, statutory and punitive damages, in addition to attorney's fees and costs. By representing under oath and penalty of perjury that this claim was essentially nonexistent, Plaintiff effectively sought to ensure that any recovery realized as a result of this litigation would be hers and hers alone, with no creditor taking part of her recovery.

### (iii)    Judicial estoppel is an appropriate remedy for Plaintiff's actions.

As noted above, judicial estoppel is tailored to address precisely this type of self-serving misuse of the bankruptcy and federal court systems. Plaintiff's blatant failure to disclose a claim that arose prior to filing of the bankruptcy action constitutes the very sort of "affront to the court's integrity" that judicial estoppel is intended to protect.[4] *See, e.g., Brockington*, 2007 WL

---

[4]  Federal circuit courts of appeal have repeatedly held that judicial estoppel bars a bankrupt debtor from pursuing a claim that has been concealed during bankruptcy proceedings. *See, e.g., Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[A]ppellate courts that have considered this question hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends."); *In re: Superior Crewboats, Inc.*, 374 F.3d 330, 332-33 (5th Cir. 2004) (reversing the district court for failing to apply the doctrine of judicial estoppel and observing that the "district court's rationale allows these debtors to have their cake and eat it too"); *Barger v. City of Cartersville*, 348 F.3d 1289, 1295-96 (11th Cir. 2003) (applying judicial estoppel to bar the plaintiff's discrimination claim because of her failure to disclose the claim on her bankruptcy filings, despite the plaintiff's contentions that she had disclosed her claim to her attorney and the bankruptcy trustee); *United States ex rel. Gerbert v. Transport Administrative Servs.*, 260 F.3d 909, 918 (8th Cir. 2001) ("[The] District Court did not err in prohibiting [the plaintiffs] from proceeding under judicial estoppel

4812205, at *4 (D.S.C. Nov. 28. 2007) (applying the doctrine of judicial estoppel where "[the plaintiff's] position in this court that she has a valid cause of action against [the defendants] is a factual assertion that is inconsistent with her previous position in the bankruptcy court that she had no contingent or unliquidated claims") (citations omitted) (copy attached); *Casto v. American Union Boiler Co. of West Virginia*, No. Civ. A 2:05-CV-00757, 2006 WL 660458, at *3 (S.D. W. Va. March 14, 2006) ("By omitting his existing claim and potential claims from his disclosures, [the plaintiff] averred to the bankruptcy court that no such claims existed. Consequently, his position before this court that he has a valid age discrimination claim based on conduct that occurred prior to his filing for bankruptcy is wholly inconsistent with the position he adopted during his bankruptcy proceeding."); *In re USinternetworking, Inc*., 310 B.R. at 277-78 (dismissing breach of contract action on judicial estoppel grounds where debtor failed to disclose the existence of the claim in its previously filed petition for reorganization).

Plaintiff sought to have the best of both worlds: she minimized her assets by omitting this asset wholesale from her bankruptcy filings, and after obtaining an unquestionably favorable discharge, she has now turned around and sought to benefit personally from this lawsuit. Making her actions all the more outrageous is the fact that, according to Plaintiff's Complaint, it was Ditech's actions, and its concurrent alleged violations of various statutes, which ultimately caused Plaintiff to seek bankruptcy protection in the first place.  Compl. ¶¶ 25–63; *Chartschlaa*, 538 F.3d at 122 ("[a] debtor may not conceal assets and then, upon termination of the bankruptcy case, utilize the assets for [her] own benefit.").  Plaintiff's inconsistent positions were neither

principles [where the plaintiffs had] represented to the bankruptcy court that they did not have any contingent claims against [the defendants]."*); Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 785-86 (9th Cir. 2001) (observing that the plaintiff's failure to list his claims against [the defendant] as assets on his bankruptcy schedules deceived the bankruptcy court and [the plaintiff's] creditors"); *Payless Wholesale Distribs., Inc. v. Alberto Culver* (P.R.J Inc., 989 F.2d 570, 571-72 (1st Cir. 1993) (holding that the plaintiff's "failure to announce [a] claim against a creditor preclude[d] it from litigating the cause of action"); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988) ("We conclude that [the plaintiff's] failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect.").

inadvertent nor the result of a mistake.  That Plaintiff would use Ditech's alleged violations as the basis for seeking bankruptcy protection from her financial obligations, only to then pivot and attempt to use the same violations as a source of personal gain, is exactly the type of double-dealing judicial estoppel is intended to prevent.  Further, Plaintiff never amended her disclosures to include any claims in this lawsuit.  Plaintiff cannot reasonably state that she was unaware of this litigation, as it arose from actions that predate the filing of Plaintiff's bankruptcy petition and it arose from actions which she claims caused her need for bankruptcy protection.

Courts in Maryland and across the country have consistently refused to permit litigants to make a mockery of the judicial system by taking such irreconcilable positions for their own financial gain.  This Court should similarly refuse to allow Plaintiff to take such liberties with the judicial system, and should dismiss her claims with prejudice.

**V.       Conclusion**

For the foregoing reasons, it is respectfully submitted that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

DATED: August 15, 2018.                         Respectfully submitted,

/s/ *Daniel Z. Herbst*_____
Daniel Z. Herbst (D. Md. Bar. No. 17510)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
Direct Phone:  +1 202 414 9232
Email:  dherbst@reedsmith.com

*Counsel for Ditech Financial LLC f/k/a Green Tree Servicing*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send electronic notification of such to

the following:

Courtney Weiner (Bar #19463)
Law Offices of Courtney Weiner PLLC
1629 K St., NW, Suite 300
Washington, DC 20006
cw@courtneyweinerlaw.com

*Counsel for Plaintiff*

/s/ *Daniel Z. Herbst*
Daniel Z. Herbst