IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| LISA ANDERSEN,<br><br>    Plaintiff,<br>v.<br><br>DITECH FINANCIAL LLC f/k/a<br>GREEN TREE SERVICING,<br><br>    Defendant. | Civil Action No.: 1:18-cv-1820<br><br><br>**OPPOSITION TO DEFENDANT'S<br>MOTION TO DISMISS** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

COMES NOW the Plaintiff, Lisa Ann Andersen ("Plaintiff"), by and through the undersigned counsel, and submits the following memorandum in opposition to Defendant Ditech Financial LLC f/k/a Green Tree Servicing's ("Ditech" or "Defendant") Motion to Dismiss the Complaint:

**INTRODUCTION**

Ditech's motion to dismiss relies on little more than generalizations, assumptions, and truisms. Though Ditech expounds at length on the requirements of bankruptcy law, it provides little analysis of the application of those statutes to the instant case. The majority of the violations alleged in Plaintiff's Complaint occurred *after* she filed her bankruptcy petition, excluding them from the scope of the bankruptcy estate. Those that arguably accrued pre-petition would likely be subject to exemptions for any recovery. Plaintiff's claims thus remain hers to bring in this case. Likewise, Ditech can make no

1

showing that Plaintiff had a duty to disclose post-petition claims, or that she acted in bad faith in her bankruptcy case, rendering judicial estoppel inapplicable. Ditech's motion raises no serious argument for dismissal and should be denied in its entirety.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2004, Plaintiff purchased a home located at 205 West Edgevale Road, Brooklyn, Maryland. Cmplt. at ¶ 19. Plaintiff refinanced the mortgage on her home in 2007 and made timely payments until losing her job in late 2013. *Id*. at ¶¶ 21, 24. Plaintiff secured a forbearance agreement and attempted to resume payments in June 2014, after she found new employment. *Id.* at ¶¶ 26-29. Ditech assumed servicing rights to Plaintiff's mortgage in or around early May 2014 but refused Plaintiff's payment in June 2014 and began aggressive attempts to collect the full mortgage arrearage. *Id.* at ¶¶ 25, 29-30.

Plaintiff applied for a loan modification in or around April 2016. *Id.* at ¶ 39. Ditech provisionally approved the modification application in or around June 20016, and Plaintiff timely made three monthly streamline payments of $600.92 pursuant to the provisional agreement. *Id.* at ¶¶ 40-41. At the end of the trial period, Plaintiff had not received final modification documents and reached out repeatedly in September, October, and November 2016 to both Ditech and Fannie Mae. *Id.* at ¶¶41-45. In the meantime, Plaintiff continued to make regular payments of the streamline amount. *Id.* at ¶ 46.

Plaintiff did not receive the final modification paperwork until mid-December 2016. *Id*. at ¶ 47. At that time, she received a modification packet dated nearly two months prior, with deadlines that had passed before the documents were even mailed. *Id.* at ¶¶ 48-49. The modification agreement also included numerous unexplained errors,

2

such as an incorrect balance, inaccurate escrow information, and the inclusion of legal fees.  *Id.* at ¶¶ 50-56.

Plaintiff sent a qualified written request and notice of error  ("QWR/NOE") to Ditech, dated December 30, 2016, regarding the loan modification.  *Id.* at ¶¶ 57-60.  Plaintiff never received a response to her QWR/NOE.  *Id.* at ¶¶ 64-65.  Before Ditech's time to respond to the QWR/NOE had expired, Plaintiff, fearing for her home, filed bankruptcy pursuant to Chapter 7 of the Bankruptcy Code.  *Id.* at ¶ 67.  Plaintiff received a discharge on April 19, 2017.  *Id.* at ¶ 70.

In May 2017 and July 2017, Plaintiff again applied for loan modifications.  Ditech denied the first because she had not signed the 2016 offer and the second based on an erroneous failure to consider Plaintiff's child support income.  *Id.* at ¶¶ 72-84.

In November 2017, Plaintiff sent another QWR/NOE.  *Id.* at 86.  Ditech did not provide an adequate response to that letter.  *Id.* at ¶¶ 87-88.

In or around January 2018, Plaintiff retained counsel and notified Ditech of her representation.  *Id.* at ¶ 89.  In the subsequent months, however, Ditech continued to contact Plaintiff directly by mail and phone.  *Id.* at ¶¶ 90-91.  Ditech also sent Plaintiff a Notice of Intent to Foreclose in or around May 2018.  *Id.* at 92.

Plaintiff filed the instant suit on June 19, 2018, alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), and Maryland consumer protection statutes.  On August 28, 2018, she moved to reopen her bankruptcy case to ensure that any claims that may have arisen prior to the filing of her bankruptcy petition are properly administered.  *See In re Andersen*, No. 17-10602, Dkt. # 18 (Bankr. D. Md.).

# ARGUMENT

## I. Legal Standards

### A. Standards Under Fed. R. Civ. P. 12(b)(1)

Though a plaintiff bears the burden of proving subject matter jurisdiction, where, as here, a defendant alleges that a plaintiff has failed to plead facts necessary for standing, "'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Navarrete v. Miller & Long Co.*, No. PWG-13-1362, 2013 U.S. Dist. LEXIS 161454, at *4-5 (D. Md. Nov. 13, 2013) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Moreover, "'[t]he party seeking to include property in the estate bears the burden of showing that the item is property of the estate.'" *Callahan v. Roanoke Cty. (In re Townside Constr., Inc.)*, 582 B.R. 407, 414 (Bankr. W.D. Va. 2018) (quoting *In re Klein-Swanson*, 488 B.R. 628, 633 (8th Cir. BAP 2013).

### B. Standards Under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff need not prove her case in the complaint: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a level higher than possibility but lower than probability. *Id.* The Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable

inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).

**II.     Plaintiff Has Standing to Bring All Post-Petition Claims**

Though Plaintiff stated that Ditech's actions led to her bankruptcy filing, it does not logically follow that *all* of her claims accrued prior to the date of the petition. Indeed, *no* violation need have accrued at the time of the petition for Ditech's actions to precipitate Plaintiff's filing. Ditech's violations that arose after Plaintiff filed her petition, however, are manifest.

Ditech's arguments and supporting case law rely on the erroneous generalization that all of Plaintiff's claims arose pre-petition. To the contrary, "[i]n Maryland, 'a cause of action accrues when: (1) the legally operative facts permitting the filing of a claim come into existence; and (2) the claimants have notice of the nature and cause of their injury.'" *Borlo v. Navy Fed. Credit Union*, 458 B.R. 228, 232 (D. Md. 2011) (quoting *Miller v. Pac. Shore Funding,* 287 B.R. 47, 50 (D. Md. 2002)). *See also Engelby v. I.C. Sys.*, No. 17-CV-0296 (PJS/FLN), 2018 U.S. Dist. LEXIS 51884, at *19 (D. Minn. Mar. 27, 2018) ("it is difficult to understand how a Chapter 7 debtor's failure to disclose a cause of action that he acquires *after* filing for bankruptcy could threaten the integrity of a system that is intended to give him a 'fresh start' by shielding from creditors his postpetition . . . acquisitions"); *In re Johns-Manville Corp.,* 57 Bankr. 680, 690 (Bankr.S.D.N.Y. 1986) ("Except in the Third Circuit, a claim is considered to arise, for bankruptcy purposes, at "the time when acts giving rise to the alleged liability were performed.")

Though facts relevant to a post-petition claim may occur before filing, where the facts do not yet give rise to a complete legal violation, no claim has accrued: even if a plaintiff fully discloses those facts to a bankruptcy trustee prior to filing, the trustee would have no basis for suit because no violation had yet occurred. *Rivera v. JP Morgan Chase Bank (In re Rivera)*, Nos. 13-14351-BFK, 13-01280, 2014 Bankr. LEXIS 344, at *10 (Bankr. E.D. Va. Jan. 27, 2014) (Trustee could not have brought any of the claims because the Plaintiff had not yet suffered the harm occasioned by the foreclosure). "[P]re-petition conduct or facts alone will not 'root' a claim in the past; there must be a pre-petition violation." *Tyler v. DH Capital Mgmt.*, 736 F.3d 455, 462 (6th Cir. 2013). *See also Cook v. Baca*, 512 F. App'x 810, 820 (10th Cir. 2013) ("Though . . . the alleged conspiracies involved property that was the subject of dispute between the parties prior to the bankruptcy filing, the alleged constitutional injuries did not exist prior to the filing.")

To determine whether a cause of action has accrued for standing purposes, the Court looks to applicable non-bankruptcy law. *Rivera*, 2014 Bankr. LEXIS 344, at *9 (citing *Borlo v. Navy Federal Credit Union*, 458 B.R. 228, 232 (D. Md. 2011)). Under RESPA, claims accrue "from the date of the occurrence of the violation." 12 U.S.C. § 2614. Similarly, a violation the FDCPA arises at the time of the attempted collection that runs afoul of the statutes' restrictions. 15 U.S.C. § 1692k(d); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004).

Plaintiff has no obligation in a Chapter 7 bankruptcy to update her petition for any post-petition claims. *See* 11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debts in property *as of the commencement of the case*") (emphasis supplied); *In re Ingram*, 531 B.R. 121, 124 (Bankr. D.S.C. 2015) (quoting 11

U.S.C. § 1306(a)(1)) (unlike Chapter 13 bankruptcy, Chapter 7 estate does not include "property . . . that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted.")

### A. Plaintiff's Claim for Consideration of an Incomplete Loss Mitigation Application Accrued After Plaintiff Filed Her Bankruptcy Petition

Plaintiff's claim pursuant to 12 C.F.R. § 1024.41(c)(2) rests in part on allegations that Ditech improperly ignored Plaintiff's child support income in rejecting her loss mitigation application. Plaintiff did not even submit the loss mitigation application at issue until July 2017, two months after the conclusion of her bankruptcy case. Ditech can make no viable argument, therefore, that the claim accrued pre-petition.

### B. Plaintiff's Claim for Failure to Respond to Her Qualified Written Request Accrued After Plaintiff Filed Her Bankruptcy Petition

RESPA provides that mortgage servicers must respond to qualified written requests and notices of error within 30 business days of receipt. 12 C.F.R. §§1024.35(e)(3)(i)(C), 1024.36(d)(2)(i)(B). "The purpose of a QWR, also called a Notice of Error or Request for Information, is to dispute an error relating to, or request information about, the servicing of a mortgage loan." *Birmingham v. PNC Bank, N.A.*, Civil Action No. PX 16-198, 2016 U.S. Dist. LEXIS 91958, at *5 (D. Md. July 15, 2016). The legal violation arises, therefore, not with the actions that prompted the inquiry or notice but with Ditech's failure to address them; unless and until a servicer fails to properly respond, no violation has occurred. Likewise, any damages under this provision of RESPA flow not from the original error but from the failure to correct it. *See Franklin v. BWW Law Grp., LLC*, Civil Action No. DKC 16-0455, 2016 U.S. Dist. LEXIS 63265, at *12-13 (D. Md. May 12, 2016) ("Plaintiff's claims concerning the

foreclosure proceeding and violations of federal statutes arise not from the origination of the Loan, but from Defendant's conduct since Plaintiff filed for bankruptcy").

Here, Plaintiff sent her original QWR/NOE on or about December 30, 2016. She filed her bankruptcy petition on January 17, 2017. At the time she filed her petition, Ditech's time to respond had not yet expired. Accordingly, it did not violate the statute until its time to respond elapsed in or around early February 2017, *after* Plaintiff filed her bankruptcy petition. Plaintiff did not even send her subsequent QWR/NOE until November 15, 2017, well after her bankruptcy discharge.

### C. Plaintiff's FDCPA Claim Arose After Plaintiff's Bankruptcy Petition

Plaintiff's FDCPA claim similarly arose based on actions not just post-petition but post-discharge. Indeed, the violation at issue here—Ditech's attempts to contact Plaintiff directly when it knew she was represented by an attorney—did not occur until spring 2018, approximately a year after the conclusion of Plaintiff's bankruptcy case. Case law makes clear that the date of violation, not the date of the debt, determines its inclusion in a bankruptcy estate. *See Velez v. Bank of N.Y. Mellon Tr. Co. N.A.*, No. 1:12cv1008 (JCC/TCB), 2012 U.S. Dist. LEXIS 153716, at *7-8 (E.D. Va. Oct. 23, 2012) (plaintiff's debt collection claims that occurred two years after Chapter 7 bankruptcy filing "are not sufficiently rooted in pre-bankruptcy conduct as to be subsumed in the bankruptcy estate"); *Engelby v. I.C. Sys.*, No. 17-CV-0296 (PJS/FLN), 2018 U.S. Dist. LEXIS 51884, at *14-15 (D. Minn. Mar. 27, 2018) ("the unlawful acts themselves did not occur until after the filing of the petition"); *Garcia v. Receivables Performance Mgmt., LLC*, No. 14 C 5367, 2014 U.S. Dist. LEXIS 155337, at *5 (N.D. Ill. Nov. 3, 2014) ("although the Verizon debt existed prior to the commencement of

8

Garcia's bankruptcy proceedings, the conduct giving rise to his FDCPA and ICFA claims did not occur until a year and a half later when RPM began its attempts to collect the debt").

### D. Plaintiff's Potential Recovery on Any Pre-Petition Claims Would Likely Fall Within Applicable Exemptions

Where the potential recovery in pre-petition claims would likely fall under exemptions to inclusion in the bankruptcy estate, "the law generally considers legal claims to remain an asset of the debtor-plaintiff rather than of the bankruptcy estate." *Carter v. Nat'l City Mortg., Inc.*, No. 1:14CV70, 2015 U.S. Dist. LEXIS 25766, at *11 (N.D.W. Va. Mar. 3, 2015) (citing *In re Combs,* A.P. No. 03-5043 (Bankr. S.D.W. Va. Oct. 20, 2004)). Here, most, if not all, of Plaintiff's potential recovery would be exempt. Under Maryland law, Plaintiff is entitled to a $6,000 exemption for miscellaneous cash or property. Md. Code, Cts. & Jud. Proc. § §11-504(b)(5), (f)(1)(i)(1). Maryland law also fully exempts any recovery for personal injury, including Plaintiff's pain and suffering as a result of emotional distress and lost wages. Md. Code, Cts. & Jud. Proc. § 11-504(b)(2). Such exemptions likely remove Plaintiff's potential recovery on any pre-petition claims from the auspices of the bankruptcy estate and provide her with standing here.[1]

### III. Plaintiff's Claims Are Not Judicially Estopped

Judicial estoppel is an "'extraordinary remedy'" and "'is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially

---

[1] For any of Plaintiff's claims that arguably accrued pre-petition, Plaintiff has filed a motion to reopen her bankruptcy in order to add those claims to her schedules and allow for their administration. *In re Andersen*, No. 17-10602, Dkt. # 18 (Bankr. D. Md.). Accordingly, to the extent the Court finds dismissal of any of these claims appropriate,

9

when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts.'" *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 639 (E.D. Va. 2016) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 365 (3d Cir. 1996)).

### A. Plaintiff's Position on Post-Petition Claims Is Consistent With Her Bankruptcy Petition

Ditech's argument for judicial estoppel rests on the flawed assumption that all of Plaintiff's claims arose pre-petition. Where a claim arose post-petition, however, "debtor did not have a duty to disclose the newly pending claims . . . and therefore had not taken inconsistent positions that would warrant the application of judicial estoppel." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 640 (E.D. Va. 2016). *See also Carter v. Nat'l City Mortg., Inc.*, No. 1:14CV70, 2015 U.S. Dist. LEXIS 25766, at *10 (N.D.W. Va. Mar. 3, 2015) ("judicial estoppel does not apply to any post-petition claims alleged in the complaint because Carter's representations in the bankruptcy proceeding did not involve any post-petition claims.") As discussed above, the majority of Plaintiff's claims did, in fact, accrue post-petition. Judicial estoppel, therefore, can present no bar.

### B. Plaintiff Acted in Good Faith

Ditech's allegations of bad faith are similarly ill-founded. Its bald accusations impugn Plaintiff's character with no basis in fact. As an initial matter, absent a disclosure requirement for post-petition claims, no bad faith can exist. *Thomas*, 193 F. Supp. 3d at 640 ("Having held that the plaintiff had no duty to disclose the pending claims to the bankruptcy court, it necessarily follows that the plaintiff has not acted in bad faith.")

10

Moreover, Plaintiff filed her bankruptcy petition *pro se* and continued in the same manner through discharge. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (internal citation and quotation marks omitted). Given Plaintiff's *pro se* status throughout her bankruptcy, the Court cannot reasonably infer that she her of her legal rights against Ditech at the time of filing—only that she knew she was in danger of foreclosure.[2] Upon analysis of the claims at issue and now with legal counsel, Plaintiff has taken steps to rectify any omissions in her *pro se* filing. *In re Andersen*, No. 17-10602, Dkt. # 18 (Bankr. D. Md.) (motion to reopen); *In re Burton*, No. 08-07777-8-SWH, 2011 Bankr. LEXIS 4512 (Bankr. E.D.N.C. Nov. 3, 2011) (allowing motion to reopen to add a claim that arose pre-petition). *See also In re Ingram*, 531 B.R. 121, 124 (Bankr. D.S.C. 2015) (motions to reopen chapter 7 cases to add pre-petition lawsuits routinely granted).

Finally, any benefit to Plaintiff in her bankruptcy from the omission of any pre-petition claims would be minimal, at best. As discussed above, any potential recovery from those claims would be mostly or entirely exempt from the bankruptcy estate. Given the limited claims that arguably arose pre-petition and the significant exemptions that would apply, there can be little argument of a benefit to Plaintiff so significant that she intentionally omitted claims.

---

[2] Ditech mischaracterizes Plaintiff's Complaint in this regard: she did not plead that Ditech's violations led to her bankruptcy filing but rather that her fear of foreclosure did. Though Ditech's actions caused the fear, it does not follow that Plaintiff appreciated the legal implications of those actions.

11

Even assuming pre-petition claims that may be subject to estoppel, Plaintiff has exhibited nothing more than inadvertence and a good faith effort to cure any deficiency. Absent bad faith by Plaintiff, judicial estoppel should not apply. *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) ("Without bad faith, there can be no judicial estoppel.")

## CONCLUSION

For the foregoing reasons, Plaintiff Lisa Andersen respectfully requests that this Court deny Defendant Ditech's Motion to Dismiss the Complaint.

Dated: Washington, DC
      August 29, 2018

Respectfully submitted on behalf of Plaintiff,

*/s/ Courtney L. Weiner*
Courtney L. Weiner (#19463)
Law Office of Courtney Weiner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
PH: 202-827-9980
cw@courtneyweinerlaw.com

*Attorney for Plaintiff*

.

**CERTIFICATE OF SERVICE**

I certify that on this 29th day of August, 2018, I caused the foregoing Opposition to Defendant's Motion to Dismiss to be served by CM/ECF on all counsel of record.

*/s/ Courtney L. Weiner*
Courtney L. Weiner